CHAD A. READLER
Acting Assistant Attorney General

ANTHONY J. COPPOLINO
Deputy Director, Federal Programs Branch

BRIGHAM J. BOWEN
Senior Trial Counsel
Tel. (202) 514-6289; Fax. (202) 616-8470
E-Mail: brigham.bowen@usdoj.gov
U.S. DEPARTMENT OF JUSTICE, CIVIL DIVISION
Federal Programs Branch, Room 7108
950 Pennsylvania Avenue NW
Washington, DC  20530

*Attorneys for Defendants*

---

## IN THE UNITED STATES DISTRICT COURT

## DISTRICT OF UTAH, CENTRAL DIVISION

| | |
|---|---|
| YUSSUF AWADIR ABDI,<br><br>             Plaintiff,<br><br>     vs.<br><br>CHRISTOPHER WRAY, Director of<br>the Federal Bureau of Investigation, in his<br>official capacity, et al.,<br><br>             Defendants. | Case No. 2:17-cv-00622 DB<br><br>**REPLY MEMORANDUM IN<br>SUPPORT OF MOTION TO DISMISS<br>FIRST AMENDED COMPLAINT**<br><br>Judge Dee Benson |

## TABLE OF CONTENTS

I.   INTRODUCTION ................................................................................................ 1

II.  ARGUMENT ..................................................................................................... 2

    A.   Challenges To The Adequacy Of DHS TRIP Must Be Dismissed For Lack of Jurisdiction. ..................................................................................................... 2

    B.   Plaintiff's Procedural Due Process Claim (Count I) Should Be Dismissed................ 4

        1.   Travel Delays Are Not A Deprivation Of Any Right To Travel. ......................... 5

        2.   Plaintiff Has Not Pled The Deprivation Of A Protected Interest In His Reputation.................................................................................................... 7

        3.   The Redress Process Is Constitutionally Adequate. ........................................ 12

    C.   Plaintiff's Substantive Due Process Claim (Count II) Should Be Dismissed. .......... 15

        1.   Plaintiff Fails To Allege The Deprivation Of A Fundamental Right. ............... 15

        2.   The TSDB And The Selectee List Are Appropriately Tailored Under Any Level Of Scrutiny................................................................................ 18

    D.   Plaintiff's Equal Protection Claim (Count IV) Should Be Dismissed...................... 21

    E.   Plaintiff's Non-Delegation Claim (Count V) Should Be Dismissed. ....................... 22

    F.   Plaintiff's APA Claim (Count III) Should Be Dismissed. ...................................... 24

    G.   All Claims Against CBP Should Be Dismissed. ................................................... 24

III. CONCLUSION ................................................................................................ 25

i

# I.       INTRODUCTION

Plaintiff devotes the bulk of his response to Defendants' Motion to Dismiss arguing that his alleged status in the Terrorist Screening Database (TSDB) violates his purported "substantive due process right of movement."  There is no such broadly defined substantive right.  Indeed, as Plaintiff concedes, substantive due process rights must be determined at the "most specific level at which a relevant tradition protecting, or denying protection to, the asserted right can be identified."  *Michael H. v. Gerald D.*, 491 U.S. 110, 127 n.6 (1989); Pl.'s Opp'n [Dkt. 23] at 6 (same).  Here, Plaintiff's specific allegation is that he is subjected to additional security screening at airports when he travels by air.  Such screening violates no fundamental substantive due process right to travel without hindrance, much less any purported broader right of "movement."

Plaintiff's other arguments in opposition to Defendants' motion to dismiss are meritless, as well.  Plaintiff largely ignores the legal issues raised by Defendants, instead expansively discussing matters not pertinent to the applicable law.  As set forth further below, Plaintiff's Amended Complaint should be dismissed because he: (1) fails to establish jurisdiction over his procedural due process claim, which is directed at orders of TSA and therefore barred from district court jurisdiction by 49 U.S.C. § 46110 (directing challenges to TSA orders to the courts of appeal); (2) fails to allege the deprivation of any protected interest, for purposes of due process, in either travel or reputation, resulting from his screening delay experiences; (3) fails to allege the deprivation of a fundamental right for purposes of substantive due process; (4) fails to state a valid  equal protection claim; (5) fails to present a valid non-delegation claim; and (6) presents no viable APA claim.

## II.     ARGUMENT

**A.     Challenges To The Adequacy Of DHS TRIP Must Be Dismissed For Lack of Jurisdiction.**

As the Government set forth in its opening brief, challenges to the adequacy of DHS TRIP must be brought in the courts of appeal under 49 U.S.C. § 46110.  Section 46110 provides for exclusive jurisdiction in the courts of appeal to review orders issued "in whole or in part" by TSA.  As the Sixth Circuit recognized, "Congress has specifically directed" TSA to establish a redress process, and "TSA has issued regulations carrying out its responsibilities[.]"  *Mokdad v. Lynch,* 804 F.3d 807, 811 (6th Cir. 2015).  By extension, the court explained that, to the extent the plaintiff "challenges the adequacy of the redress process, his claims amount to a challenge to a TSA order."  *Id.* at 811; *see also Beydoun v. Lynch*, No. 14-CV-13812, 2016 WL 3753561, at *3–4 (E.D. Mich. July 14, 2016) (dismissing alleged Selectee's claims for failure to join TSA as a necessary party because the Complaint essentially challenged DHS TRIP); *Bazzi v. Lynch*, No. 16-CV-10123, 2016 WL 4525240, at *3–5 (E.D. Mich. Aug. 30, 2016) (same); *both aff'd on other grounds sub nom*, *Beydoun v. Sessions*, 871 F.3d 459 (6th Cir. 2017).

Here, to the extent Plaintiff challenges the adequacy of DHS TRIP procedures available to travelers who believe they are on a watchlist, he challenges an order of TSA.  The Second Amended Complaint (hereinafter, "2AC") specifically alleges the "[i]nadequacy of the DHS [TRIP] [p]rocess," 2AC ¶ 132 *et seq.*, and Counts I and III challenge the constitutional adequacy of the procedures, *see id.* Counts I, III.  Moreover, the Prayer for Relief seeks an order requiring Defendants to "provide individuals designated on the federal terror watch list with a legal mechanism that affords them notice of the reasons and bases for their placement on the federal terror watch list and a meaningful opportunity to contest their continued inclusion on the federal

terror watch list." *Id.* at 38.  This function — the provision of redress mechanisms — has been specifically assigned by Congress to and fulfilled by TSA; accordingly, Section 46110 applies.

Plaintiff's minimal response is to ignore the Sixth Circuit's decision in *Mokdad*, instead discussing only the unpublished order of the Fourth Circuit in *Mohamed v. Holder*, No. 11-1924 (4th Cir. May 28, 2013), and the subsequent district court decision in *Elhady v. Piethota*, No. 16-cv-375, Dkt. 47 (E.D. Va. Sept. 5, 2017).  But Plaintiff has no response to Defendants' arguments and the more persuasive reasoning of the Sixth Circuit in *Mokdad*.

As Defendants noted, in the unpublished *Mohamed* decision, the Fourth Circuit suggested that it was not clear that Congress intended to channel all claims related to placement on the No Fly List to the Court of Appeals in part because it was an interagency action and judicial review required review of both TSC and TSA.  *Mohamed*, Dkt. 18 Ex. A at 5–6.  But, as the Sixth Circuit recognized in *Mokdad*, the question presented by Section 46110 is not whether <u>all</u> claims related to the TSDB are channeled to the courts of appeal; the question is whether a challenge is directed at TSA orders.  Thus, in assessing a procedural due process claim, the primary question is whether the process is adequate, not which agency would provide relief from the listing itself.  Only if the TSA procedures are inadequate would the question of remedy be reached, and as to that question, a TSA order is at issue; TSA is the proper defendant; any remedy would be directed at TSA; and thus jurisdiction resides in the courts of appeals.  49 U.S.C. § 46110; *Mokdad*, 804 F.3d at 809.  Here, Plaintiff has sued TSA and directly challenges the procedures devised and applied by TSA in the redress process.  Thus, there is no question that TSA orders are at issue here, and Section 46110 applies.

Plaintiff's reliance on *Elhady* fares no better; the district court there simply followed *Mohamed* without significant analysis, reasoning that, since plaintiffs challenged "interagency" actions, Section 46110 had no effect.  *Elhady* at 8–9.  But the court offered no reason why the

3

mere presence of "interagency" action rendered a clear jurisdictional statutory mandate a nullity.

Again, the more persuasive, statutorily grounded, reasoning is that of *Mokdad*.  Section 46110

channels challenges to TSA orders (and the procedures made available to travelers by TSA are,

unquestionably, TSA orders) into the courts of appeal.  *Mokdad*, 804 F.3d at 811.  Moreover, all

claims inescapably intertwined with orders that fall within Section 46110 are subject to its

channeling effect (including, for example, claims directly against TSC for alleged placement in

the TSDB).  *See Americopters, LLC v. FAA*, 441 F.3d 726, 736 (9th Cir. 2006); *Gilmore* v.

*Gonzales*, 435 F.3d 1125, 1132 (9th Cir. 2006); *see also Ligon v. LaHood*, 614 F.3d 150, 154–57

(5th Cir. 2010) (discussing the "inescapably intertwined" doctrine and collecting cases).  For

these reasons, Plaintiff's challenge to the adequacy of the DHS TRIP redress process is a

challenge to a TSA order that must be raised in the courts of appeal.

**B.      Plaintiff's Procedural Due Process Claim (Count I) Should Be Dismissed.**

Even assuming *arguendo* that jurisdiction lies in this Court, Plaintiff's procedural due

process claim in Count I should be dismissed on the grounds that Plaintiff has not alleged the

deprivation of a cognizable, protected liberty or property interest and, in any event, Plaintiff has

received all process that is due.

The first step of a due process analysis is to identify whether the Plaintiff alleges the

deprivation of a protected interest.  *Farthing v. City of Shawnee*, 39 F.3d 1131, 1135 (10th Cir.

1994); *Teigen v. Renfrow*, 511 F.3d 1072, 1078 (10th Cir. 2007); *Hennigh v. City of Shawnee*,

155 F.3d 1249, 1253 (10th Cir. 1998).  Plaintiff attempts to identify two alleged deprivations: the

alleged deprivation of a right of "movement," and his alleged interest in his reputation (*e.g.*, a

"stigma-plus" claim).  Opp'n at 21–29.  Both efforts fail as a matter of law.

1.   <u>Travel Delays Are Not A Deprivation Of Any Right To Travel.</u>

Plaintiff alleges that he has been subjected to enhanced security measures prior to boarding flights.  But multiple courts have concluded that the right to travel is not implicated by travel delay and inconvenience akin to the modest delays at issue here.  *See* Defs.' Mot. at 18 (collecting cases).[1]  Thus, Plaintiff has not pled the deprivation of either a fundamental right to travel (or, as Plaintiff labels it, "movement"), nor of any protected liberty interest in travel.  *See Teigen*, 511 F.3d at 1078 (requiring a deprivation of a protected interest).

As the *Beydoun* court observed, plaintiffs claiming to be on the Selectee List "can still fly after additional screening."  *Beydoun*, 2016 WL 3753561, at *5; *Bazzi*, 2016 WL 4525240, at *6–7.  Inconvenience, inspections, or travel delays, like those described by Plaintiff, do not amount to a constitutionally cognizable deprivation of any liberty interest.  *See, e.g.*, *League of United Latin Am. Citizens*, 500 F.3d at 535; *Beydoun*, 2016 WL 3753561, at *5 (allegations of delay, harassment, and humiliation were insufficient to state a deprivation of a cognizable protected liberty interest in travel); *Bazzi*, 2016 WL 4525240, at *5–8 (same).

Plaintiff's isolated contentions that he has been deprived of "their [sic] right to undertake domestic and international travels," Opp'n at 22; that other individuals have to "plan their travel," *id.* at 24; and that the No Fly List (not implicated here) and Selectee List "cause extra screening at land borders and airports," *id.* at 27; fall well short of demonstrating any deprivation

---

[1] Plaintiff devotes additional argument to contesting Plaintiff's alleged status on the No Fly List. Opp'n at 20–24.  But, as his own pleadings demonstrate, he has no plausible basis for alleging that he is on the No Fly List and pleads no such claim.  *See* Dkts. 6, 10; *see also* 2AC ¶¶ 49–53 (alleging that when Plaintiff travels, he is unable to "print his boarding pass at a kiosk" and must "proceed to a ticketing agent," that this inconvenience takes him "about a half an hour to obtain a boarding pass," and that he is subjected to additional screening at the TSA security checkpoints and at his gate of departure).

here.  *Teigen*, 511 F.3d at 1078.[2]  By his own account, he routinely is able to fly and has done so at least three times since June 2017.  At most, Plaintiff alleges that his interests in travel (by air) are inconvenienced or slightly delayed, related to additional screening he claims he experiences.  This does not constitute a deprivation of any protected liberty interest in travel.  *Beydoun*, 2016 WL 3753561, at *5; *Bazzi*, 2016 WL 4525240 at *6–7.

As Defendants previously explained, the district court's opinion in *Elhady*, Dkt. 16-5, which permitted alleged Selectee List claims to survive a Rule 12 motion, is incorrect in multiple respects and should not be followed.  That court mistakenly concluded that plaintiffs had met their burden of alleging deprivation by simply <u>identifying</u> "a procedurally protected liberty interest."  *Id.* at 12.  But the existence of a protected interest in travel is not the question; the question is whether that interest has been <u>deprived</u>.  And on that question, the court concluded that additional airport screening is "liberty-constraining," and suggested that the plaintiffs at bar were subjectively "deterred from traveling" due to the delays they had experienced.  *Id.*  That is not the standard; mere deterrence or "constraining" is not deprivation, as several other decisions cited above have recognized.[3]  Plaintiff makes no additional attempt to defend the *Elhady* decision in this regard, other than to cite its result.  Opp'n at 31.  Because Plaintiff has not been deprived of the ability to travel and only alleges delays, his due process claim must be dismissed.

---

[2] Plaintiff devotes significant energies to invoking the alleged and unsubstantiated potential harms other individuals claim to have experienced as a result of alleged watchlist status, such as denials of hazmat transportation licenses, firearm purchases, or the ability to maintain a bank account or purchase cars from auto dealerships.  But, as Defendants argued in their opening motion, the theoretical experiences of unnamed third parties are not before this Court.  Plaintiff alleges nothing about experiencing such harms himself.  Defs.' Mot. at 21 (discussing irrelevance of third-party allegations).

[3] Even if it were, Plaintiff has not plausibly alleged any deterrence in travel, as he has repeatedly traveled by air in the last six months.

2.   <u>Plaintiff Has Not Pled The Deprivation Of A Protected Interest In His Reputation.</u>

Plaintiff devotes the majority of his argument to his due process claim of reputational harm.  Such "stigma-plus" claims require a showing that a person (1) suffered a stigma from governmental action; and (2) experienced an alteration or extinguishment of "a right or status previously recognized by state law."  *Paul v. Davis*, 424 U.S. 693, 711 (1976).  The majority of courts to have considered this doctrine in the context of travel screening have rejected such claims.  *See Beydoun,* 871 F.3d at 469 (rejecting stigma-plus watchlisting claims because plaintiffs failed to sufficiently allege that they were stigmatized or that they were deprived of a right previously held under the law); *Green v. Transp. Sec. Admin.*, 351 F. Supp. 2d 1119, 1129–30 (W.D. Wash. 2005) (rejecting a stigma-plus claim in the context of a challenge to enhanced security screening); *but see Elhady*, Dkt. 16-5.  This Court should do likewise.

a.   *Plaintiff fails to adequately plead public stigmatization.*

Plaintiff does not allege that the Government has disclosed his purported status publicly. Indeed, Plaintiff concedes, as he must, that an individual's watchlist status is not disclosed to the individual, let alone the general public.  *id.* ¶ 6.  Without public dissemination, Plaintiff's stigma-plus claim must fail.  *See Tarhuni v. Holder*, 8 F. Supp. 3d 1253, 1275 (D. Or. 2014) (instruction to an airline to deny boarding does "not constitute dissemination of the stigmatizing information in such a way as to reach the community at large"); *see also Johnson v. Martin*, 943 F.2d 15, 17 (7th Cir. 1991) (no public disclosure when statements not disseminated beyond proper chain of command); *Van Atta v. Def. Intelligence Agency*, No. 87-1508, 1988 WL 73856, at *2–3 (D.D.C. July 6, 1988) (recognizing the "crucial distinction between official disclosure and public disclosure"); *see also Mohamed v. Holder*, No. 1:11-cv-50, 2015 WL 4394958, at *6 (E.D. Va.

7

July 16, 2015) (questioning if "the dissemination of the No Fly List within or among government agencies or to airlines, standing alone, would satisfy the public disclosure prong").[4]

Plaintiff ignores this authority, instead isolating a Second Circuit employment decision in which the court noted that, where "stigmatizing charges" are "placed in the discharged employee's personnel file and are <u>likely to be disclosed</u>," *Brandt v. Bd. of Coop. Educ. Servs.*, 820 F.2d 41, 45 (2d Cir. 1987) (emphasis added), a stigma-plus claim could survive a motion for summary judgment. But Plaintiff fails to discuss *Brandt*'s full analysis — that there must actually be a showing of such disclosure in order for a stigma-plus claim to prevail. *Id.* at 45. Indeed, the *Brandt* court repeatedly emphasized the need for actual "public disclosure" in order to make out a stigma-plus claim. *Id.* at 43–44; *Martin*, 943 F.2d at 17 ("It is axiomatic that in order to succeed on a constitutional defamation claim the allegedly defamatory statement must actually be 'made public.'"). That is also the settled law of the Tenth Circuit, which Plaintiff does not address. *See Sky Harbor Air Serv., Inc. v. Reams*, 491 F. App'x 875, 886 (10th Cir. 2012) ("Under the first element, the defamatory statement must be published.") (citing *Jensen v. Redev. Agency of Sandy City*, 998 F.2d 1550, 1558 (10th Cir. 1993)).[5]

Notwithstanding this weight of authority, Plaintiff speculates that Defendants reveal watchlist status to certain third party stakeholders — *e.g.*, "state and local authorities," "foreign

---

[4] Plaintiff mischaracterizes the *Mohamed* decision as suggesting that the stigma-plus public disclosure requirement is satisfied by the dissemination of watchlisting information. Opp'n at 24. His reliance is misplaced. In *Mohamed*, the court speculated about potential impacts that might flow from overt denials of boarding for individuals on the No Fly List, which is not implicated here, and did not reach the subject of whether airport screening satisfied the public disclosure prong of the stigma-plus analysis. 2015 WL 4394958, at *6.

[5] Not only does Plaintiff fail to address this analysis, but he flatly mischaracterizes the law by suggesting that "no court anywhere has ever declared such a requirement, and defendants cite no authority and concoct no rationale as to why this Court should adopt this novel threshold." Opp'n at 22. Defendants cited multiple authorities (ignored by Plaintiff) for the requirement of public stigmatization, and the primary case Plaintiff cites — *Brandt* — explicitly requires it.

governments," "gun sellers," the captains of sea-faring vessels."  2AC ¶¶ 4–17.  But Plaintiff does not contend that anything of the kind has happened to him, and offers nothing to support such unadorned allegations.  Indeed, to the extent watchlist information is shared with law enforcement entities or other Government agencies, such sharing is carefully constrained by regulation, precisely in order to limit its dissemination.  49 U.S.C. § 114(r); Office of the Press Secretary, Homeland Security Presidential Directive ("HSPD-6"), ¶ 4 (2003), https://www.hsdl.org/?view&did=784194 (permitting use of watchlisting information for, *inter alia*, "screening processes that have a substantial bearing on homeland security").

     Plaintiff's reliance on the recent *Elhady* decision is again misplaced.  While the *Elhady* court suggested that TSDB status may be "disseminated to third parties outside the relevant federal agencies and airlines," *Elhady*, Dkt. 16-5 at 14–15, the mere possibility that dissemination "may" occur is not sufficient to survive a motion to dismiss, particularly absent any plausible allegation that such dissemination has occurred with respect to the Plaintiff.  Moreover, the *Elhady* court acknowledged that the alleged information-sharing is not actually public, and the court failed to consider whether such information-sharing is public in the sense that matters for purposes of reputational injury, *i.e.*, reputation-harming within one's community.  *Paul*, 424 U.S. at 702; *Brandt*, 820 F.2d at 44–45; *Tarhuni*, 8 F. Supp. 3d at 1275.

     Plaintiff also speculates about various circumstances in which third parties might infer alleged watchlist status from the fact that someone is screened, or from "repeated 'SSSS' designation" on boarding passes.  Opp'n at 24–25.  But these arguments for "inferred" stigmatization have been repeatedly rejected by other courts.  *United States v. Hartwell*, 436 F.3d 174, 180 (3d Cir. 2006) (stating that "[s]ince every air passenger is subjected to a search, there is virtually no 'stigma attached to being subjected to search at a known, designated airport search point'" (quoting *United States v. Skipwith*, 482 F.2d 1272, 1275 (5th Cir. 1973))); *accord United*

*States v. Wehrli*, 637 F.2d 408, 409 (5th Cir. 1981) (same); *Tarhuni*, 8 F. Supp. 3d at 1275; *see also Martin*, 943 F.2d at 17; *Van Atta*, 1988 WL 73856, at *2–3.  Again, Plaintiff makes no allegations that such theoretically stigmatizing effects have actually happened to him.  Defs.' Mot. at 17 & nn.13, 15.[6]  The only allegation Plaintiff has plausibly put forward is that he has been screened at airports.  He cannot aggregate the theoretical harms potentially experienced by others (whether at gun or car dealerships, or at the bank) to cobble together a claim that he has been stigmatized by defamatory governmental statements.  *See Paul*, 424 U.S. at 711; *Beydoun*, 871 F.3d at 469; *Green*, 351 F. Supp. 2d at 1129–30.

### b. Plaintiff fails to adequately allege a "plus."

Under the stigma-plus doctrine, "defamation, standing alone, is not sufficient to establish a claim for deprivation of a liberty interest.  There must be a change of legal status as well." *Guttman v. Khalsa*, 669 F.3d 1101, 1125 (10th Cir. 2012) (internal quotation and citation omitted).  Here again, Plaintiff alleges no such change in status.  In assessing airport screening claims, the weight of authority holds that airport screening in itself, even when repeated, does not create a change of legal status for purposes of the doctrine.  *See Green*, 351 F. Supp. 2d at 1130 (plaintiffs did "not allege[] any tangible harm to their personal or professional lives that is attributable to their association with the No-Fly List, and which would rise to the level of a Constitutional deprivation of a liberty right … [or] any injury to a property interest"); *Beydoun*, 871 F.3d at 469 (plaintiffs claiming to be on the Selectee List "cannot show that their liberty interest in travel was infringed upon by being subject to relatively minor additional screening");

---

[6] Plaintiff alleges that he has been stigmatized because "other passengers" allegedly become "fearful of him" and "see differential treatment he faces at airports and points of entry." 2AC ¶ 53.  Given the multitude of possible reasons for such searches, and the anonymity associated with them (Plaintiff does not allege that his name is announced to the "other passengers"), these allegations cannot establish public disclosure of defamatory information.

*see also Beydoun*, 2016 WL 3753561, at *5; *Bazzi,* 2016 WL 4525240, at *7.  There is no right

to enter the country or board a plane without being subjected to inspection or search, and there is

therefore no alteration of any legal status when this occurs.

Plaintiff's primary support for this theory again arises from the alleged and

unsubstantiated experiences of third parties not before the Court.  Plaintiff does not allege that he

has been prohibited from purchasing a gun, or from obtaining a hazmat license, or from working

in the sterile area at an airport.  *See* 2AC ¶¶ 70–81.  Nor does he identify any right he otherwise

would enjoy to do these things that was deprived from him because of alleged watchlist status.

On the contrary, Plaintiff's only alleged harm is that he has been screened at airports.  The

doctrine requires an actual alteration or extinguishment of a "right or status previously

recognized by state law," not a theoretical set of potential alterations allegedly experienced by

third parties.

Plaintiff attempts to argue, primarily characterizing out-of-circuit precedent, that the

"plus" prong is satisfied where the alleged defamatory action merely is coupled with a

"government-imposed effect distinct from the stigma it attaches to him."  Opp'n at 27.  That is

not the law.  The doctrine requires a change of legal status; that is, a governmentally imposed

burden that 'significantly altered [the individual's] ... status as a matter of state law.'"  *Gwinn v.

Awmiller*, 354 F.3d 1211, 1224 (10th Cir. 2004) (quoting *Paul*, 424 U.S. at 710–11); *Brown v.

Montoya*, 662 F.3d 1152, 1167–68 (10th Cir. 2011) (same).  Thus, for example, the standard may

be met when a driver's license or parole is revoked, *Paul*, 424 U.S. at 711; when an individual is

falsely labeled a sex offender and required to register as one, *Gwinn*, 354 F.3d at 1224; or when a

government employer falsely impugns an employee's good name or integrity in the course of

terminating him, *Guttman*, 669 F.3d at 1125.  But the standard is not met, for example, when a

doctor alleges the government defamed him but fails to "allege any governmental legal barrier to

11

his ability [to] practice medicine," *Brecheen v. Lofaro*, No. 10-CV-263-S, 2013 WL 12066965, at *11 (D. Wyo. May 24, 2013), *aff'd*, 559 F. App'x 723 (10th Cir. 2014); or when a tree service business owner alleged governmental defamation that caused economic harm to his business, *Fortner v. Cty. of El Paso*, No. 15-CV-0644-WJM-NYW, 2016 WL 806751, at *5 (D. Colo. Mar. 2, 2016).[7]

Here, Plaintiff identifies no alteration of his status as a matter of state law. Indeed, he identifies no alteration of any kind of his legal status. His only factual allegation is that he is routinely screened at airports. Airport security screening does not amount, by any reasonable measure, to an alteration of legal status for purposes of the "plus" prong of the stigma-plus doctrine. Plaintiff's stigma-plus claim therefore must fail.[8]

    3.   The Redress Process Is Constitutionally Adequate.

Even if Plaintiff had pled a deprivation of a protected interest, his due process claims would still fail. "[D]ue process is flexible and calls for such procedural protections as the particular situation demands." *Morrissey v. Brewer*, 408 U.S. 471, 481 (1972). In evaluating due process, the Court should consider three factors: (1) "the private interest that will be affected by the official action"; (2) "the risk of an erroneous deprivation of such interest through the procedures used, and the probable value, if any, of additional or substitute procedural safeguards"; and (3) "the Government's interest," including the function involved and the fiscal

---

[7] Plaintiff also relies in part on the Second Circuit decision in *Doe v. Dep't of Pub. Safety ex rel. Lee*, 271 F.3d 38 (2d Cir. 2001), *rev'd sub nom Conn. Dep't of Pub. Safety v. Doe*, 538 U.S. 1, 4 (2003). Plaintiff fails to note that this decision was reversed by the Supreme Court, on alternative grounds. Plaintiff does not address the Tenth Circuit's standard.

[8] In his Amended Complaint, Plaintiff also claims that he has a liberty interest "in nonattainder (*i.e.*: the interest against being singled out for punishment without trial)." 2AC ¶ 149. Defendants have explained why that claim is baseless, *see* Mot. to Dismiss at 21–22, and Plaintiff fails to contest them in his opposition brief. The Court should deem this basis for Plaintiff's claim waived.

and administrative burdens that the additional or substitute procedural requirements would entail. *Gilbert v. Homar*, 520 U.S. 924, 931–32 (1997) (quoting *Mathews v. Eldridge*, 424 U.S. 319, 335 (1976)).

Assuming, *arguendo*, that Plaintiff has a protected interest that has been deprived, under the balancing of the interests at stake, he has received all the process he would be due. Plaintiff's alleged interest in the most convenient possible travel is quite limited. By contrast, the Government's interest in prevention of catastrophic terrorist attacks is extraordinary. *See* Defs.' Mot. at 23 (collecting cases). With respect to the process due, Defendants' opening brief demonstrates the robustness of the watchlisting placement process, *id.* at 23–24, as well as the Government's well-grounded interest in withholding watchlist status from the public, especially considering its value to terrorists, *id.*

In response, Plaintiff offers the remarkable observation that he has himself conducted "a quantitative analysis of the TSDB's performance over the last decade." Opp'n at 28. Plaintiff points to his "observation" that "none of the perpetrators of violent acts of terrorism inside the United States have been on the No Fly List when they attacked." *Id.* Of course, his "analysis" addresses the No Fly List, which is not before the Court and is not relevant to the efficacy of security screening. In any event, Plaintiff's self-serving analysis of the national security interests served by the No Fly List is entitled to no deference and does not withstand scrutiny. Deference in the national security context is due to the Government, not to Plaintiff. *See Holder v. Humanitarian Law Project*, 561 U.S. 1, 33–35 (2010) (observing that, "when it comes to collecting evidence and drawing factual inferences in this area, the lack of competence on the part of the courts is marked, and respect for the Government's conclusions is appropriate" (internal citation and quotation marks omitted)). Plaintiff's attempt to correlate reported acts of violence and the No Fly List says nothing about whether the placement of individuals on the No

13

Fly List may have thwarted potential acts of violence, and nothing about whether individuals who are placed on the List (or, as allegedly relevant here, the Selectee List) were appropriately placed under the applicable standard, and thus says nothing relevant to whether the process afforded individuals who allege they are on a watchlist satisfies the requirements of due process in this setting.[9]

Plaintiff argues further that watchlisting determinations cannot be grounded in a reasonable suspicion standard because they are "unmoored from actual criminal conduct" and therefore, to Plaintiff, are "basically meaningless as objective measures."  Opp'n at 29.  Again, this assessment is unfounded.  Plaintiff fundamentally misunderstands the purpose of watchlisting, which is not to investigate or punish criminal conduct, but rather to identify, to the extent possible in a dynamic, challenging threat environment, individuals who may be a threat to aviation security, 49 U.S.C. § 114(h)(3)(A), and to take "appropriate action with respect to that individual," such as security screening, *id.* § 114(h)(3)(B).  Plaintiff's assertion that such a "prospective threat standard" is improper, Opp'n at 30, is without merit.  This very approach is, in fact, mandated by Congress.  *See Latif v. Lynch*, No. 3:10-CV-00750-BR, 2016 WL 1239925, at *12 (D. Or. 2016) (rejecting similar challenge to prospective threat assessments in watchlisting, in No Fly List context).  Implementation of this mandate does not require the use of statistical models to forecast the likelihood of future terrorist acts, as Plaintiff contends, but calls for the exercise of judgment based on available information that a person poses a threat.  The Government commits no due process "error" if an individual on the watchlist never successfully commits a terrorist act.

---

[9] Even more baseless are Plaintiff's conclusions that the "government's watch list would be 'no more effective than a list of randomly selected individuals,'" Opp'n at 28 (quoting 2AC ¶ 130), and that "defendants have no ability to watch list persons whose placement on the watch list would further Defendants' stated objectives," *id*. (quoting 2AC ¶ 131).

Balancing these respective interests, the harm to counterterrorism efforts caused by alerting individuals as to whether or not they are on the terrorist watchlist, and permitting them to probe the highly sensitive reasons for that placement, far outweighs the benefits of additional process for people who are merely subject to travel delays. *See Rahman v. Chertoff,* 530 F.3d 622, 627 (7th Cir. 2008) ("Any change that reduces the number of false positives on a terrorist watch list may well increase the number of false negatives."). For these reasons, Plaintiff's procedural due process claim fails as a matter of law.

## C.    Plaintiff's Substantive Due Process Claim (Count II) Should Be Dismissed.

Plaintiff's substantive due process claim should also be dismissed. The Government concurs with Plaintiff that *Washington v. Glucksberg*, 521 U.S. 702, 721 (1997), provides the appropriate framework for analyzing a substantive due process claim, but Plaintiff's claims fail at the first step because he does not carefully define the right at stake. Plaintiff's broad invocation of a general "right of movement" ignores the Supreme Court's instruction that the substantive due process inquiry "must begin with a careful description of the asserted right." *Reno v. Flores*, 507 U.S. 292, 302 (1993). Indeed, as Plaintiff concedes, substantive due process rights must be determined at the "most specific level at which a relevant tradition protecting, or denying protection to, the asserted right can be identified." *Michael H. v. Gerald D.*, 491 U.S. 110, 127 n.6 (1989); Pl.'s Opp'n at 6 (same). But Plaintiff refuses to apply this standard, instead demanding that airport screening violates a broad, fundamental right of "movement," such that this Court should enjoin its use as applied to Plaintiff. Plaintiff's claim is meritless.

### 1.    Plaintiff Fails To Allege The Deprivation Of A Fundamental Right.

As explained in connection with his procedural due process claim, Plaintiff has failed to identify a deprivation of a protected liberty interest giving rise to procedural due process protections — including an interest in delay-free travel — much less a fundamental right

accorded substantive due process protections.  *See Beydoun*, 871 F.3d at 468 (rejecting substantive due process Selectee List claim for failure to show a deprivation of a fundamental right).  Thus, even if he had demonstrated a deprivation of these interests, that would only trigger a procedural due process analysis, rather than demonstrate the existence and deprivation of any fundamental right for purposes of substantive due process.

Plaintiff's Opposition contains a lengthy discourse meant to show that the TSDB implicates an extremely broad "right of movement," that this "right" of movement is firmly rooted in our history, and that the watchlist is thus subject to strict scrutiny.  Opp'n at 6–24. Plaintiff suggests, among other things, that this "right of movement" can be found in the Constitution "with a presence that saturates the entire document but especially the Bill of Rights' penumbras."  *Id.* at 7.

But Plaintiff's argument omits any mention of Supreme Court precedent on the scope of the right to travel.  The Court has described the "crucial difference between the freedom to travel internationally and the right of interstate travel."  *See Califano v. Aznavorian*, 439 U.S. 170, 176–77 (1978) (Government action that infringes the right to travel abroad will be upheld unless it is "wholly irrational.") (emphasis added); *Haig v. Agee*, 453 U.S. 280, 306 (1981); *see also* Defs.' Mot. at 28.  Only interstate travel is protected as a fundamental right and only direct restrictions on interstate travel (rather than simply temporary delays at airport screening checkpoints) implicate the right to interstate travel.  There is no basis in the Constitution or precedent for Plaintiff's purported fundamental "right of movement."  *See Doe v. City of Lafayette*, 377 F.3d 757, 769 (7th Cir. 2004) ("It is much too broad ... to characterize [the] liberty interest as involving a generalized right to movement."); *United States v. Bredimus*, 352 F.3d 200, 209 n.12 (5th Cir. 2003) ("We must distinguish between the right to travel generally versus the right to travel in foreign commerce."); *Hutchins v. Dist. of Columbia*, 188 F.3d 531, 537

(D.C. Cir. 1999) ("Since the right to free movement would cover both interstate and international travel, [*Haig v. Agee*] at least implies that the right recognized by the Court is decidedly more narrow.").  Plaintiff's attempt to ignore these distinctions on the basis of a never-before-recognized "right of movement" is unavailing.

Accordingly, Plaintiff's assertion that alleged watchlist placement violates his fundamental rights because being searched at airports or at the border is "intended" to impede movement is misguided.[10]  And even assuming that alleged watchlisting had some deterrent effect on travel, Plaintiff has no fundamental right under substantive due process to avoid being searched when he travels.[11]  Likewise, Plaintiff's bare allegation that international intelligence-sharing is "intended" to restrict travelers' movement is not supported by plausible factual material.  *See Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).  The far more plausible explanation for international intelligence sharing about terrorism is that it is intended to detect and prevent terrorists' ability to conduct attacks.

Indeed, Plaintiff's view, if credited, would subject <u>any</u> Government action which arguably impeded domestic travel to strict scrutiny, including:  all airport security screening, state driver's license requirements, emissions testing standards, identification requirements for

---

[10] Here, as elsewhere, Plaintiff devotes substantial energies to arguing that the No Fly List violates substantive due process. Opp'n at 10–11.  But Plaintiff does not challenge any alleged No Fly List placement, and would not have standing to do so.  *Clapper v. Amnesty Int'l USA*, 133 S. Ct. 1138, 1143 (2013) (requiring that alleged harms be "certainly impending" for standing to be established).

[11] In the (generally more protective) First Amendment context, a simple allegation of subjective chill does not suffice to allege an injury for the purposes of Article III standing; an allegation that plaintiff is chilled from engaging in speech is "not an adequate substitute for a claim of specific present objective harm or a threat of specific future harm." *Laird v. Tatum*, 408 U.S. 1, 13–14 (1972); *Clapper*, 133 S. Ct. at 1151 (Plaintiffs "cannot manufacture standing merely by inflicting harm on themselves based on their fears of hypothetical future harm that is not certainly impending.").

boarding an aircraft, raising of subway or bus fares, placement of highway exits, and requirements to inspect domestic aircraft.   Any such regulations can impact the convenience, cost and possibility of travel within the U.S., and might impact someone's decision whether to travel; they are not, however, subject to heightened scrutiny.  *Beydoun*, 871 F.3d at 467–68 ("[W]e cannot conclude that this minor disturbance [of airport screening] actually resulted in denying Plaintiffs the right to travel.").[12]

2.   The TSDB And The Selectee List Are Appropriately Tailored Under Any Level Of Scrutiny.

Even if the Court were to conclude that a fundamental right is at stake, there is no merit to Plaintiff's claim that terrorist watchlisting is unconstitutional as applied to U.S. citizens who have not been charged with a terrorism-related crime.  The alleged travel restrictions imposed by the TSDB are justified by interests that have been described as "the most compelling of governmental duties" and "of the highest national priority."  *Mohamed v. Holder*, 995 F. Supp. 2d 520, 527 (E.D. Va. 2014).  Screening and inspection, as well as the denial of boarding, all bear a substantial relationship to the aim of preventing violent terrorist attacks, and they are narrowly tailored to that aim.  Narrow tailoring does not require the Government to exhaust "every conceivable" alternative to prevent individuals on the No Fly List from boarding U.S. carriers or flights over the United States; instead, it is sufficient that the Government show that no "workable ... alternatives" would achieve the Government's goals to protect civil aviation and

---

[12] In his pleading, Plaintiff alleges that airport screening "shocks the conscience" — invoking the second line of precedent of the substantive due process doctrine, separate from fundamental rights analysis — but he does not mention it in his opposition to Defendants' motion.  *See* 2AC ¶ 163; Defs.' Mot. at 26.

national security.  *See Fisher v. Univ. of Tex. at Austin*, 133 S. Ct. 2411, 2420 (2013) (applying this standard to a state university's consideration of race in its admissions process).

Plaintiff advances several arguments that watchlisting is not properly tailored to serve this compelling interest, none of which has merit.  Plaintiff's suggestion that only individuals who have been charged with a crime should be subject to airport screening fails any logical test as a workable alternative for detecting and preventing terrorist attacks, and ignores the mandate of Congress that TSA screen for individuals who "may be" a threat.  49 U.S.C. § 114(h).

Plaintiff next argues that the watchlist is "underinclusive" and harmful to the Government's interests because it "requires the government to disclose its investigative interest in suspected terrorists who attempt to fly."  Opp'n at 15–20.  But this consideration, even if true, cannot conceivably render the watchlist a violation of substantive due process.  To whatever extent additional screening may lead individuals to speculate that they may be of concern to the Government, it would be far more harmful to the Government's interests to take no steps to detect whether a person boarding a plane may be associated with terrorism.

Plaintiff also argues that the watchlist is underinclusive because it "is easily evaded." Opp'n at 17.  But Plaintiff's evidence of such widespread evasion is scant.  Rather, he extrapolates from the Government's identified concerns about <u>potential</u> evasion to conclude that evasion is a necessary result of watchlisting.  *Id.*  That argument lacks any foundation in fact or logic.  Again by this reasoning, any counter-terrorism measure that does not prevent other potential terrorist threats or could, in theory, be evaded, would qualify as "underinclusive."[13]

---

[13] Moreover, Plaintiff's logic does not lead to a conclusion that the watchlist is "easily evaded," because simply "traveling by other means" does not "evade" the No Fly List.  A person who travels by other means cannot use an airplane as a weapon of mass destruction and obviously will find it more difficult to make his way to the site of a planned terrorist attack or terrorist training center on a different continent by car than by plane.

But narrow tailoring does not require that the law be the only or most effective means of preventing the harms at issue.  *Cf. Ruskai v. Pistole*, 775 F.3d 61, 77 (1st Cir. 2014) (observing that "constitutional precedent does not demand that a search be minimally intrusive in order to pass constitutional muster"); *Hutchins*, 188 F.3d at 543 ("The District can hardly be faulted for determining not to include 17 year olds in the curfew; obviously that would be more intrusive and create more of an enforcement problem.").[14]

Plaintiff also argues that the Selectee List is "overinclusive" because it prevents lawful activities, such as attending "professional activities, weddings, funerals, and vacations."  Opp'n at 18.  That simply is not so — alleged Selectee List status here has merely resulted in screening at airports.  Plaintiff's assertion that watchlisting is over-inclusive because the Government cannot accurately make predictive judgments about national security likewise fails.  As explained above, watchlisting is tailored to meet a specific, threat-based Congressional mandate. 49 U.S.C. § 114(h)(3).  An assessment that someone poses a threat of committing an act of terrorism emerges from specific intelligence about that individual and his or her circumstances that point to known or possible terrorist activity.  Such predictive judgments about national security are at the heart of Executive Branch expertise.  *See Humanitarian Law Project*, 561 U.S. at 33–35 (discussing deference to Executive in national security matters).  While the Government may ultimately determine that some individuals on a watchlist are not associated with terrorism, that possibility cannot render the effort to identify and prevent threats to aviation through screening or the denial of boarding a violation of substantive due process.

---

[14] Plaintiff relies on inapposite cases in the First Amendment context, where underinclusiveness can raise "doubts about whether the government is in fact pursuing the interest it invokes, rather than disfavoring a particular speaker or viewpoint."  *Brown v. Entm't Merchants Ass'n,* 131 S. Ct. 2729, 2740 (2011).  This authority is irrelevant here.

**D.      Plaintiff's Equal Protection Claim (Count IV) Should Be Dismissed.**

Plaintiff also fails to state a claim under the Equal Protection Clause.  As Plaintiff necessarily concedes, he must allege sufficient facts to support a finding of improper motive to state such a claim.  Specifically, he must demonstrate that "the challenged state action intentionally discriminates between groups of persons." *SECSYS, LLC v. Vigil*, 666 F.3d 678, 685 (10th Cir. 2012).  Where, as here, the challenged action "is generally applicable to all persons, no presumption of intentional discrimination arises; proof is required." *Id.*  Moreover, it is insufficient only to allege disparate impact.  *Pers. Adm'r of Mass. v. Feeney*, 442 U.S. 256, 274 (1979).  Such facts, if shown, might provide a "starting point," but "purposeful discrimination is the condition that offends the Constitution." *Id.*[15]

Plaintiff claims he has "direct evidence" of discrimination in the form of a purportedly leaked, unauthenticated document (marked as classified) that they claim shows a "disproportionately" high number of residents of Dearborn, Michigan (where many Muslim Americans live) have been watchlisted.  Assuming, *arguendo*, such a document is authentic and may be properly considered,[16] nothing in it purports to or appears to invoke a religious classification.  At most, such material, if admissible, might be circumstantial evidence pertaining

---

[15] Plaintiff tries to undercut this well-settled law by relying selectively on an Eleventh Circuit case, which suggested that discriminatory intent can be established indirectly, by proof of "evidence of such factors as substantial disparate impact, a history of discriminatory official actions, procedural and substantive departures from the norms generally followed by the decision-maker, and discriminatory statements in the legislative or administrative history of the decision." *Elston v. Talladega Cty. Bd. of Educ.*, 997 F.2d 1394, 1406 (11th Cir. 1993).  Tenth Circuit authority makes clear there must be factual allegations from which one could plausibly infer discriminatory intent.  *See*, *e.g.*, *Vigil*, 666 F.3d at 685; Defs.' Mot. Part IV.E (collecting cases).  There are none here.

[16] The Government cannot confirm or deny the authenticity of a purportedly stolen classified document.  At the pleading stage, we address it solely as a matter of allegation.

to Dearborn, not evidence of an impermissible religious classification in watchlisting *per se*. And it would not be proof of discriminatory intent, even indirectly.

Plaintiff also asserts that "almost all public instances" of Americans being placed on the No Fly List "have been Muslims," that travel to a "Muslim country" is a basis for watchlisting, and that the list is used as a tool to "coerce Muslims to cooperate with authorities."  Opp'n at 34. These assertions, which are not plausibly based on any factual allegations in the Complaint, cannot be credited.   In any event, they are not sufficient to sustain a plausible claim of religious discrimination.  On its face, watchlisting is focused on concerns related to terrorist conduct, and an "obvious alternative explanation" is that the Government is focused on detecting persons who have ties to terrorist activities or organizations.  *See Iqbal*, 556 U.S. at 682–83.  Plaintiff's allegations are not sufficient "factual content to nudge" the plaintiff's claim of a massive, government-wide practice of nominating only Muslim-Americans to the watchlist, based on their religion, "across the line from conceivable to plausible."  *Id.*

For these reasons, the Court should dismiss Plaintiff's equal protection claims.  *See Elhady*, Dkt. 16-5 (rejecting identical equal protection claims).

      **E.**    **Plaintiff's Non-Delegation Claim (Count V) Should Be Dismissed.**

Count V of the Amended Complaint fails to state a claim that watchlisting constitutes an unconstitutional delegation of legislative power.  As described in *Whitman*, the first and last time that the Supreme Court concluded that Congress unconstitutionally delegated its legislative power was in 1935 when it struck down two New Deal statutes.  *See Whitman v. Am. Trucking Ass'ns,* 531 U.S. 457, 474 (2001).  Since then, the Court has "almost never felt qualified to second-guess Congress regarding the permissible degree of policy judgment that can be left to those executing or applying the law."  *Id.* at 474–75 (citation omitted).

Instead of grappling with this case law or with the authorizing statutes underlying airport screening, Plaintiff relies on two cases, neither of which found a violation of the non-delegation doctrine.  In a case predating *Whitman*, a plurality of the Supreme Court construed the statute at issue to incorporate a more stringent standard for agency action than that advocated by the Government.  In addition to the plain text of the statute and ample legislative history, the plurality relied in part on cases citing the non-delegation doctrine for the proposition that Congress likely did not intend the broad delegation of power that the Government advocated. *Indus. Union Dep't, AFL-CIO v. Am. Petroleum Inst.*, 448 U.S. 607, 645–46 (1980).  Plaintiff points to no such ambiguity or alternative construction of the watchlisting statutes.  The authorizing statutes assume that the Executive Branch is responsible for gathering intelligence and assessing threats to national security, and specifically authorize the Executive Branch to use that information in specific ways to screen air travelers, applying intelligible principles.

Even farther afield, Plaintiff cites *Kent v. Dulles*, 357 U.S. 116 (1958), which held that the Secretary of State lacked the statutory authority to deny passports to U.S. citizens based solely on their constitutionally protected activities.  *Kent* does not appear to involve a non-delegation claim, and is readily distinguishable in any event.  The watchlist does not deprive the right to travel, *see Haig*, 453 U.S. at 306, and is not based on the kind of First Amendment activity at issue in *Kent*.

The statutory scheme underlying the Government's watchlisting charged the Government with establishing "policies and procedures requiring air carriers [to] ... prevent [an] individual [who may be a threat to civil aviation or national security] from boarding an aircraft, or take other appropriate action with respect to that individual."  49 U.S.C. § 114(h)(l)–(3).  This clearly delineated the general policy, and was supplemented by numerous implementation directives to "assess threats to transportation," 49 U.S.C. § 114(f)(2); to "develop policies, strategies, and

23

plans for dealing with threats to transportation security," *id*. § 114(f)(3); to "oversee the

implementation, and ensure the adequacy, of security measures at airports," *id*. § 114(f)(l1); and

to "compar[e] passenger information to the automatic selectee and no fly lists and utilize all

appropriate records in the consolidated and integrated terrorist watchlist maintained by the

Federal Government" in performing its pre-screening functions, *id*. § 44903(j)(2)(C)(ii).

Plaintiff ignores these provisions, which more than establish the requisite "intelligible" principle

to withstand a non-delegation challenge.  *See*, *e.g.*, *Whitman,* 531 U.S. at 472–73 (upholding

provision of the Clean Air Act authorizing EPA to set air quality standards at a level "requisite to

protect public health"); *Touby v. United States*, 500 U.S. 160, 163 (1991); *see also Elhady*, Dkt.

16-5 (rejecting identical non-delegation claims).

**F.      Plaintiff's APA Claim (Count III) Should Be Dismissed.**

Plaintiff's APA claim appears to be largely coextensive with his constitutional claims and

should be dismissed for the same reasons.   He alleges that he was stigmatized "without a

constitutionally adequate legal mechanism" to challenge his placement.  2AC ¶ 169.  The

Complaint also states, in conclusory fashion, that Plaintiff "does not present a security threat to

commercial aviation."  *Id*. ¶ 172.  Even if the Court had jurisdiction over the APA claim, *see* Part

II.A, *supra*, the claim would fail for the reasons set forth above as to the procedural due process

claim, and Plaintiff cannot separately demonstrate that the DHS TRIP process is arbitrary or

capricious in violation of the APA.  *See* 5 U.S.C. § 706(2)(A).  Plaintiff does not address this

claim in his Opposition and, in any event, it should be dismissed for the reasons set forth in

Defendants' motion.  *See* Defs.' Mot. Part II.G.

**G.      All Claims Against CBP Should Be Dismissed.**

Finally, the Amended Complaint fails to state any valid claim against CBP.   Although

Plaintiff added CBP as a Defendant, it is difficult to discern from the face of the Amended

Complaint what, if any, facts Plaintiff is alleging against CBP and what claim he seeks to bring against that agency.  Nowhere in the Amended Complaint does Plaintiff allege that CBP took any improper action against him.  Indeed, Plaintiff's only mention of CBP is limited to a single observation that CBP receives information related to watchlisting in pursuing its mission to secure the nation's borders.  CBP should be dismissed as a defendant.

### III.   CONCLUSION

For the foregoing reasons, the Court should dismiss this action.  Defendants request oral argument on this motion.


Dated: February 7, 2018                Respectfully submitted,

                                       CHAD A. READLER
                                       Acting Assistant Attorney General

                                       ANTHONY J. COPPOLINO
                                       Deputy Director, Federal Programs Branch

                                       _____/s/ Brigham J. Bowen_____
                                       BRIGHAM J. BOWEN
                                       Senior Trial Counsel
                                       Tel. (202) 514-6289; Fax. (202) 616-8470
                                       E-Mail: brigham.bowen@usdoj.gov
                                       U.S. DEPARTMENT OF JUSTICE, CIVIL
                                       DIVISION
                                       Federal Programs Branch, Room 7108
                                       950 Pennsylvania Avenue NW
                                       Washington, DC  20530

                                       *Attorneys for Defendants*