# IN THE UNITED STATES DISTRICT COURT

# FOR THE DISTRICT OF UTAH

| | |
|---|---|
| YUSSUF AWADIR ABDI,<br><br>    Plaintiff,<br><br>v.<br><br>CHRISTOPHER WRAY, Director of the Federal Bureau of Investigation, in his official capacity, et al.,<br><br>    Defendants. | **MEMORANDUM DECISION AND ORDER**<br><br><br>Case No. 2:17-cv-622-DB<br><br>District Judge Dee Benson |

Before the court is Defendants' Motion to Dismiss First Amended Complaint. (Dkt. No. 18.) The court held a hearing on the Motion on April 5, 2018. At the conclusion of the hearing, the court took the Motion under advisement. Now being fully informed, the court issues this Memorandum Decision and Order.

Background

In June of 2017, Plaintiff—a United States citizen—flew to Kenya to bring his wife and children, who had recently received visa approval, with him to the United States. (First Amended Complaint at ¶¶ 34-35.) On June 14, 2017, Plaintiff appeared at Jomo Kenyatta International Airport in Nairobi, Kenya to board a commercial flight back to his home in the United States. (*Id.* at ¶ 34.) Plaintiff tried to check in at a kiosk stationed at the airport, but was directed to an airline representative to manually check him in for his flight. (*Id.* at ¶ 36.) Plaintiff's wife and children printed their boarding passes without difficulty, but the Qatar Airlines representative told Plaintiff that the United States would not allow him to board his flight. (*Id.* at ¶ 39.)

The following day, Plaintiff went to the United States Embassy in Kenya to obtain information as to why he was denied boarding. (*Id.* at ¶ 41.) The representatives at the embassy did not provide Plaintiff with any information. (*Id.* at ¶ 42.) Plaintiff rescheduled his flight for the following day, June 16, 2017, on which he was allowed to board. (*Id.* at ¶¶ 43-44.) When Plaintiff arrived at the Los Angeles International Airport, he was subjected to a lengthy screening process, which caused him to miss his connecting flight to Salt Lake City. (*Id.* at ¶ 44.) Plaintiff rescheduled his flight to Salt Lake City for June 18, 2017, which he was allowed to board after another lengthy screening process. (*Id.* at ¶ 45.)

Since then, Plaintiff has flown on three separate occasions: to San Jose, California in July 2017; to and from Mecca Saudi Arabia in August 2017; and to and from Virginia in October 2017. (*Id.* at ¶ 47.) On each trip, Plaintiff was required to obtain his boarding pass from a ticketing agent rather than a kiosk. (*Id.* at ¶ 49.) Each time, it took about a half hour for Plaintiff to obtain his boarding pass, after the ticketing agent called the Terrorist Screening Center and stamped Plaintiff's boarding pass with "SSSS". (*Id.* at ¶¶ 49-50.) Each time, Plaintiff was subjected to a lengthy screening process. (*Id.* at ¶ 51.)

In September of 2003, the Terrorist Screening Center ("TSC") was established to consolidate the government's approach to terrorism screening. (*Id.* at ¶ 58.) The TSC, which is administered by the FBI, develops and maintains the federal government's consolidated Terrorism Screening Database (the "watchlist"). (*Id.*) The watchlist has two primary components: the Selectee List and the No Fly List. (*Id.* at ¶ 59.) Those placed on the Selectee List are subject to extra screening at airports and land border crossings, and their boarding passes

are often stamped with "SSSS". (*Id.*) Those on the No Fly List are prevented from boarding flights that fly into, out of, or through United States airspace. (*Id.*)

Plaintiff believes that he has been on the Selectee List component of the watchlist since 2014, because that is when he began to be subjected to extra security procedures when traveling by airplane.[1] (*Id.* at ¶ 26.) Sometime in 2016, Plaintiff filed a redress request through the Department of Homeland Security Traveler Redress Inquiry Program ("DHS TRIP"). (*Id.* at ¶ 32.) On May 22, 2017, Plaintiff received a standard form letter that neither confirmed nor denied the existence of any watchlist records relating to him. (*Id.* at ¶¶ 33, 137.) The letter did not set forth any basis for inclusion on the watchlist, nor did it state whether the government had resolved the complaint at issue. (*Id.*)

Discussion

Plaintiff challenges his placement on the watchlist on several grounds: 1) procedural due process, 2) substantive due process, 3) agency action in violation of the Administrative Procedure Act ("APA"), 4) equal protection, and 5) non-delegation. (*Id.* at ¶¶ 143-190.) To survive a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6), a complaint must contain "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). In deciding a motion to dismiss, "courts must consider the complaint in its entirety, as well as other sources courts ordinarily examine when ruling on Rule 12(b)(6) motions to dismiss, in particular, documents incorporated into the complaint by reference, and matters of which a court may take judicial notice." *Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308, 322 (2007). The court must accept all well-pleaded allegations in the

---

[1] Plaintiff also believes that he may have been upgraded to the No Fly List for a short time while he was in Kenya in June of 2017. (*Id.* at ¶ 1.)

complaint as true and "construe them in the light most favorable to the plaintiff." *Williams v. Meese,* 926 F.2d 994, 997 (10th Cir.1991).

*Jurisdiction*

As a threshold matter, Defendant argues that this court lacks jurisdiction to the extent Plaintiff challenges the adequacy of the DHS TRIP procedures. Counsel for Plaintiff stated at oral argument that he is not challenging the DHS TRIP process, but rather the TSC determination to place him on the watchlist in the first instance. Based on Plaintiff's assertion that he does not challenge the DHS TRIP process (arguably an order of TSA), and Defendant's acknowledgement that the TSC is not an agency covered by 49 U.S.C. § 46110, the court denies Defendant's request for dismissal on those grounds.

*Procedural Due Process*

Plaintiff's first claim alleges that Defendants violated his procedural due process rights by placing him on the watchlist without notice or a hearing. The Due Process Clause states that "No person shall be * * * deprived of life, liberty, or property, without due process of law[.]" U.S. Const. amend. V. "The requirements of procedural due process apply only to the deprivation of interests encompassed by the [Constitution's] protection of liberty and property." *Bd. of Regents of State Colleges v. Roth*, 408 U.S. 564, 569 (1972). To determine whether procedural due process has been violated, courts consider three factors: (1) "the private interest that will be affected by the official action;" (2) "the risk of an erroneous deprivation of such interest through the procedures used, and the probable value, if any, of additional or substitute procedural safeguards;" and (3) "the Government's interest, including the function involved and

the fiscal and administrative burdens that the additional or substitute procedural requirement would entail." *Mathews v. Eldridge*, 424 U.S. 319, 335 (1976).

Here, Plaintiff identifies two private interests that are affected by his placement on the watchlist: 1) the right of movement and 2) his reputational interests. Plaintiff argues that the right of movement is "a fundamental right that can be traced back to the Magna Carta." (Dkt. No. 23 at 21.) In support of his position that the freedom of movement is a constitutionally protected right, Plaintiff cites to an Eastern District of Virginia case, *Mohamed v. Holder*, 995 F. Supp. 2d 520, 530 (E.D. Va. 2014), and general statements made by the Supreme Court in the context of the right to travel in *Kent v. Dulles*, 357 U.S. 116, 126 (1958). Neither case supports the broad adoption of a general freedom of movement suggested by Plaintiff.

The right to travel has been recognized by the Supreme Court as a constitutionally protected interest. *See id.* This court has not been provided with any authority to extend that right to travel to protect a right to movement generally. Plaintiff has been consistently inconvenienced in his travel by his status on the watchlist. But the Supreme Court has not recognized a right to convenient or unimpeded travel. Plaintiff has failed to show that the right to movement is a liberty interest that is protected under the Constitution, particularly where, as here, Plaintiff has been able to travel, albeit inconveniently.

Plaintiff also fails to show that any recognized reputational interest has been harmed. Injury to reputation alone is "not a 'liberty' interest protected" under the Due Process Clause. *Siegert v. Gilley*, 500 U.S. 226, 233 (1991). "For a plaintiff to prevail on a claim that the government has violated the Due Process Clause by damaging its reputation, that plaintiff must satisfy the 'stigma-plus' standard. That standard requires the plaintiff to demonstrate both "(1)

5

governmental defamation and (2) an alteration in legal status." *Martin Marietta Materials, Inc. v. Kansas Dep't of Transp.*, 810 F.3d 1161, 1184 (10th Cir. 2016). Plaintiff argues that the publication of the watchlist and the additional public screening required of him at airports is sufficient to satisfy this standard. The court disagrees.

Even assuming that Plaintiff has adequately alleged defamation, he has not suffered a change of legal status. The types of deprivations which have been recognized under the "stigma-plus" standard include actions such as revocation of a driver's license, *Paul v. Davis*, 424 U.S. 693, 711 (1976), being labeled as a sex offender and required to register as one, *Gwinn v. Awmiller*, 354 F.3d 1211, 1224 (10th Cir. 2004), and defamation upon termination of employment. *Guttman v. Khalsa*, 669 F.3d 1101, 1125 (10th Cir. 2012). Plaintiff's repeated screening at airports, while no doubt frustrating to Plaintiff, do not rise to the level of a change in legal status. Plaintiff has not identified any constitutionally protected liberty or property interest. Accordingly, Plaintiff's procedural due process claim must be dismissed.

*Substantive Due Process*

Plaintiff's substantive due process claim similarly fails. The Supreme Court has set forth an "established method of substantive-due process analysis" which has "two primary features." *Washington v. Glucksberg*, 521 U.S. 702, 721 (1997). First, a court must "carefully formulat[e] the interest at stake." *Id.* at 722. Second, the court must determine whether the interest at stake is among those "fundamental rights and liberties" rooted in our country's history. *Id.* at 720-721.

Plaintiff asserts that the right of movement is a fundamental right embedded as an unenumerated right in the Constitution. Plaintiff does not provide case law precedent that supports his position. Rather, Plaintiff would have this court rely on quotes from the colonists

and dicta from right to travel cases. This court is unwilling to create a new unenumerated right under the Constitution. Accordingly, Plaintiff's substantive due process claim fails.

*Agency Action under the APA*

Plaintiff's APA claim alleges that he was stigmatized "without a constitutionally adequate legal mechanism" to challenge his placement on the watchlist. (Compl. at ¶ 169.) Plaintiff seems to have abandoned this claim by asserting that he is not challenging the adequacy of the DHS TRIP procedures. However, even if Plaintiff maintains this claim—and assuming this court has jurisdiction to hear it—Plaintiff's APA claim fails because he has failed to identify a constitutionally protected interest, as discussed in the Procedural Due Process section above.

*Equal Protection*

The Equal Protection Clause prohibits the government from "deny[ing] to any person within its jurisdiction the equal protection of the laws." U.S. Const. amend. XIV, §1. To demonstrate a deprivation of this constitutional guarantee, a plaintiff must demonstrate that the challenged action "intentionally discriminates between groups of persons." *SECSYS, LLC v. Vigil*, 666 F.3d 678, 685 (10th Cir. 2012). Where, as here, the challenged action "is generally applicable to all persons, no presumption of intentional discrimination arises; proof is required." *Id.* It is insufficient to allege only disparate impact. *Pers. Adm'r of Mass. v. Feeney*, 442 U.S. 256, 274 (1979). The Plaintiff must show a discriminatory purpose, which "implies more than intent as volition or intent as awareness of consequences" and instead requires Plaintiff to show that unequal treatment is "an intended consequence" of the government action. *Vigil*, 666 F.3d at 685 (quoting *Feeney*, 442 U.S. at 279).

The Complaint with its attachments fails to demonstrate intentional discrimination by the government. Plaintiff alleges a disparate impact on Muslim Americans, but disparate impact is insufficient to establish intentional discrimination in violation of the Equal Protection Clause under Tenth Circuit precedent. Plaintiff also argues that the government uses "impermissible and inaccurate religious profiles in compiling the federal watch list." (Dkt. No. 23 at 34.) Plaintiff's conclusory statements lack factual support, even considering the purportedly leaked government documents attached to Plaintiff's Complaint. Plaintiff has failed to sufficiently allege intentional discrimination by the government in violation of the Equal Protection Clause.

*Non-Delegation*

"Congress may not constitutionally delegate its legislative power to another branch of Government." *Touby v. United States*, 500 U.S. 160, 165 (1991). But when Congress "lay[s] down by legislative act an intelligible principle to which the person or body authorized to [act] is directed to conform, such legislative action is not a forbidden delegation of legislative power.'" *Mistretta v. United States*, 488 U.S. 361, 372 (1989) (quoting *J.W. Hampton, Jr., & Co. v. United States*, 276 U.S. 394, 409 (1928)). To set forth a constitutionally permissible "intelligible principle" while delegating authority, Congress need only "clearly delineate[] the general policy, the public agency which is to apply it, and the boundaries of this delegated authority.'" *Mistretta*, 488 U.S. at 372–73 (quoting *Am. Power & Light Co. v. SEC*, 329 U.S. 90, 105 (1946)).

Here, Congress has charged TSA with overall responsibility for airline security. *See* 49 U.S.C. § 114(d). Together with the FBI, TSA must "assess current and potential threats to the domestic air transportation system," and "decide on and carry out the most effective method for continuous analysis and monitoring of security threats to that system." 49 U.S.C. § 44904(a). In

consultation with other federal agencies, TSA must "establish policies and procedures requiring air carriers [to] … prevent the individual from boarding an aircraft, or take other appropriate action with respect to that individual." 49 U.S.C. § 114(h)(1)–(3). This delegation of authority provides a general policy, the agencies which are to apply it, and the bounds within which it is to be applied. Accordingly, it sufficiently sets forth an "intelligible principle" and does not violate the non-delegation doctrine.

## Conclusion

For the foregoing reasons, Defendants' Motion to Dismiss is hereby GRANTED.

DATED this 20th day of April, 2018.

BY THE COURT:

_____
Dee Benson
United States District Judge